Kenny J. HALFACRE and Walter A DUTY
*v.* STATE of Arkansas

CR 79-216                                                598 S.W. 2d 89
Supreme Court of Arkansas
Opinion delivered May 12, 1980
Rehearing denied June 16, 1980

40

*James E. Davis,* for appellants.

*Steve Clark*, Atty. Gen., by: *Robert J. DeGostin, Jr.*, Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. This is a postconviction proceeding based upon charges of ineffectiveness of counsel. After an evidentiary hearing the trial judge entered an order finding no merit in the various allegations relied upon by the two appellants. We affirm his decision.

The appellants were convicted of aggravated robbery, in that they used a pistol in robbing James Green at his grocery store and filling station in Fulton on January 27, 1978. As indicated by our opinion on the first appeal, the State's proof, which was accepted by the jury, was very nearly conclusive of the appellants' guilt. *Halfacre* and *Duty* v. *State*, 265 Ark. 378, 578 S.W. 2d 237 (1979). Green testified that two white males, driving a yellow Datsun 280Z, robbed him of an estimated $300, using what appeared to be a blue-steel .22-caliber pistol. Green at once notified the police. The appellants, driving a yellow Datsun 280Z, were apprehended in about 20 minutes after a short chase. The officers searched the suspects and the car, finding a blue-steel .22-caliber pistol and about $262 in currency. An additional sum in change was found in the car the next day. At the trial Green identified the defendants as the robbers.

Larry Patterson, an attorney experienced in handling criminal cases, was appointed to represent the two defendants. His partner, Joe Short, assisted him in preparing the case. Patterson died within three months after the trial, but there were notes in his file describing some of the work that he had done in the case.

About three days after the trial Halfacre wrote a letter to the trial judge complaining, among other things, about Patterson's representation of the defendants. That letter, with a later amendment, was treated as a motion for a new trial for ineffectiveness of counsel. We discuss its assertions first, because the State had notice of those allegations and an opportunity to rebut them.

At the trial the defendants relied upon an alibi, testifying that they were in Hope or in that vicinity at the time of the robbery. Halfacre, in his letter to the judge, complained that the defendants had told Patterson there were some witnesses in Hope who might remember the defendants and help prove their innocence, but Patterson had not sought out those witnesses. Neither the names of the witnesses nor the places where they might be found were disclosed. Patterson's notes recite that the defendants said they had no witnesses to offer. Short testified that the defendants said they had stopped at a

service station in Hope, but they could not remember the station, who waited on them, or even where the station was. Short, nevertheless, visited service stations in an effort to find possible witnesses, but he had no success. Thus the appellants' position narrows down to this: Despite the State's overwhelming proof of guilt, the defendants were somewhere else at the time. The attorneys were at fault because they could not find witnesses to corroborate the defendants' alibi, even though the defendants were unable to identify the witnesses or to say where they might be found. Such unfounded charges obviously do not call for a new trial.

In the letter Halfacre complained that Patterson had been ineffective because he was seeking a political office at the time. That implication of ineffectiveness was rebutted by the State's proof that Patterson did not campaign until after office hours.

Later on, after Halfacre had consulted the prison law library, he complained that Patterson had not objected, during Halfacre's cross examination, to a reference to a previous criminal conviction that was more than ten years old. Halfacre cited Uniform Evidence Rule 609 to support his argument. An objection certainly could have been made; but whether it should have been made, emphasizing the reference still further, was a question of judgment. The reference was to some extent invited, in that Halfacre volunteered the information that he had served time in Arkansas (in addition to other more recent convictions in Arkansas for forgery and uttering and in Florida for manslaughter). It is settled that the mere showing of errors, omissions, improvident strategy, or bad tactics on the part of counsel is not sufficient to prove prejudicial incompetence. *Haynie* v. *State*, 257 Ark. 542, 518 S.W. 2d 492 (1975). In this instance, had an objection been made the court might have ruled that any possible error was invited. In any event, a single instance of questionable tactics. by counsel with respect to a collateral matter falls far short of satisfying the appellants' burden of proving ineffectiveness of counsel.

Various complaints are made about a pretrial line-up at which two witnesses, presumably Green and his wife, iden-

tified the two suspects. As far as the line-up itself goes, the appellants consented to it, Patterson was present and apparently was satisfied, and Patterson recorded in his notes that both defendants were identified by the victims "without a doubt." Moreover, a photograph of the line-up was considered at the evidentiary hearing, but that photograph has not been brought up with the record for our inspection. Finally, there is no showing that any supposed defects in the line-up were such as to lead to a misidentification at the trial.

Counsel argues that, in view of our holding in *Sims* v. *State*, 258 Ark. 940, 530 S.W. 2d 182 (1975), Patterson should have requested a pretrial hearing with regard to the line-up. We did not so hold in *Sims*, where we were considering a line-up at which counsel had not been present. Here Patterson was present at the line-up and seems to have been satisfied by his own observation that it did not taint the in-court identification. If that was the situation, it was not his duty to request a pretrial hearing. To the contrary, a lawyer would be subject to censure if he chose to waste the court's time with a hearing he thought to be unnecessary and useless.

At the hearing below Halfacre testified about various details that were not in his motions and of which the State had no notice. He said, for example, that after the trial he asked Patterson why he had not objected to the reference to the old conviction, and Patterson replied that he was allowed only six objections and he had used them all. Halfacre elaborated on the subject of missing witnesses, saying for the first time that he had been shopping for a nightgown for his wife and had gone into a certain shop. We need not enumerate all the statements made by Halfacre, because the ultimate question of credibility was for the trial judge to decide.

What seems to have happened is that Halfacre, by resorting to the prison library and perhaps to his imagination, raised a number of objections in connection with his case. He does not seem to realize that such an objection is without merit unless the error or omission is of such a nature as to have had a possible effect upon the outcome of the trial. That kind of proof is wholly lacking. We are convinced that the

appellants received a fair trial and that their burden of showing incompetency on the part of their counsel has not been sustained.

Affirmed.